# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 11-cv-00911 (JFB) (ARL)

————————————

CYLDE J. JENNINGS,

Plaintiff,

VERSUS

THE MUNICIPALITY OF SUFFOLK COUNTY, ET. AL.,

Defendants.

————————————

**MEMORANDUM AND ORDER**
February 13, 2013

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Clyde J. Jennings ("plaintiff" or "Jennings") brought this action against the County of Suffolk, County Executive Steve Levy, the Suffolk County Police Department, the Narcotics Enforcement Special Operations Team (collectively, the "Suffolk defendants"), the North Shore Long Island Jewish Health System ("North Shore" or "Hospital") and medical doctor Mark Auerbach ("Dr. Auerbach") (collectively, the "medical defendants"), and other individually-named defendants who are members of either the police force or Hospital.[1,2] Plaintiff alleges that the

defendants deprived him of his civil rights when the Suffolk defendants inflicted excessive force upon him at the time of his arrest on December 20, 2007, and when, subsequent to his arrest, the defendants denied him adequate medical care while in police custody on December 20-21, 2007.[3]

Defendants move to dismiss this action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that plaintiff's complaint fails to state a legally cognizable claim of a civil rights violation under 42 U.S.C. § 1983.

---

[1] The Court refers to both the Suffolk defendants and the medical defendants collectively as, "defendants."

[2] Additionally named defendants include Detective Christopher Talt (Shield #1327), Supervising Sergeant John Diffley (Shield #542), Supervising Sergeant John Doe (Shield #594), Police Officer Michael J. Cammarata (Car #306), Police Officer Timothy Drake (Car #306), Transporting P.O. John

Doe (Shield #5729), Transporting P.O. John Doe (Shield #6037), Stationhouse Det. John Doe (Shield #4096), Photographer Det. Serrata (Shield #1373), Police Department Cell Attendant (Shield #116), Tracy Busch (Registered Nurse), and David Reed (R.P.A.-C).

[3] In particular, plaintiff alleges violations of Article I, Section 5 of the United States Constitution, as well as of the First, Fourth, Eighth, and Fourteenth Amendments. (Compl. ¶ 32.)

Defendants additionally allege that plaintiff's Section 1983 claim is time-barred. The medical defendants likewise assert that plaintiff's medical malpractice claim is time-barred. For the reasons set forth herein, the Court grants the defendants' respective motions to dismiss all federal claims, and the Court declines to exercise supplemental jurisdiction over any state claims.[4]

Specifically, plaintiff's Section 1983 claims are based upon defendants' alleged conduct in December 2007. Because this lawsuit was not filed until February 2011, the federal claims are untimely under the applicable three-year statute of limitations. Although plaintiff contends that additional improper medical care received in the summer of 2011 (that was only necessary because of the alleged December 2007 conduct) should extend the three-year period, the Court disagrees. The 2011 medical care is a separate and discrete event, unrelated to the 2007 conduct and to the defendants in this case. For this reason, the

2011 medical care cannot resurrect the untimely claims related to the alleged 2007 conduct. Moreover, plaintiff has failed to allege a sufficient basis for equitable tolling. Accordingly, the federal claims are dismissed.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from plaintiff's February 24, 2011 complaint, as well as from his April 18, 2012 amended complaint, and are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motions to dismiss and will construe them in a light most favorable to plaintiff, the non-moving party.

Plaintiff alleges that, at approximately 10:00 p.m. on the night of December 20, 2007, members of the Suffolk County Police Department assaulted him during an arrest, causing him to sustain various physical injuries. (Compl. ¶¶ 3-7.)[5] Specifically, plaintiff contends that, after being chased by a police officer, he laid down on the ground with his hands behind his back. (Id. ¶ 4.) An officer then punched him on the right side of his face, with another officer placing his foot on the previously punched part of plaintiff's face, pressing it into the ground. (Id. ¶¶ 4-5.) With his hands now cuffed behind his back, plaintiff claims he next suffered several kicks to his face, (id. ¶ 6), and that "[a]fterwards, I was helped to my feet by several Police Officers, and the [sic] punching and hitting me with fist and retractible-batons [sic]," (id. ¶ 7.)

Plaintiff claims that, following the assault, he requested medical treatment

---

[4] On November 19, 2012, while the current motion to dismiss was pending, plaintiff filed a motion to amend his complaint again. (Pl.'s Mot. to Amend Compl., ECF No. 64.) Plaintiff is seeking to amend the complaint to include claims against various defendants for medical/dental treatment he allegedly received in 2011 in an upstate facility controlled by the New York State Department of Correctional Services. This Memorandum and Order solely addresses defendants' motions to dismiss the current amended complaint, filed on April 18, 2012. The medical defendants suggest that the claims against them have been abandoned because they are not named in the November 19, 2012 proposed pleading; the Court declines to deem them abandoned, however, because it is possible that plaintiff simply would like to supplement his prior pleading by adding new defendants and events, rather than replace it. Thus, the Court will continue to treat the amended complaint, filed on April 18, 2012, as the operative pleading, which the Court reads in conjunction with the original complaint. The Court will address the latest motion to re-plead at a telephone conference, which will be scheduled in the near future.

[5] Plaintiff does not clarify in his complaint the grounds for his arrest.

several times; each time, he was denied it. (*Id.* ¶¶ 10-14.) Following his arrest, plaintiff was brought to the Third Precinct where he was interviewed, photographed, and brought to the cell area. (*Id.* ¶ 10-13.) Plaintiff states that he expressed his need for medical attention to the interviewing officer, the photographer, and the cell attendant; all refused or failed to provide him with such treatment. (*Id.*)

The following day, December 21, 2007, police took plaintiff to the emergency room at Southside Hospital, a hospital owned and operated by North Shore. (*Id.* ¶ 17; Defs.' North Shore and Auerbach's Mem. in Supp. of Mot. to Dismiss ("Medical Defs.' Mem.") at 2.) Dr. Auerbach was his treating physician. (Compl. ¶ 17.) The transporting officers allegedly instructed Dr. Auerbach, along with co-defendants Tracy Busch, R.N. and David Reed, R.P.A.-C., to "clean [plaintiff's] face as best that they could and only administer [him] whatever medical attention that is minimal (such as medications). And don't take any [x]-rays or [p]hotograhs of him." (*Id.*) According to plaintiff, the treating physicians provided him with "minimal treatment and [then] released [him] to the transporting [o]fficers." (*Id.*)

As a result of the alleged assault and deficient medical treatment, plaintiff asserts that he sustained various physical injuries, including a loss of teeth; "pains that [he] deal[s] with on a constant basis . . . in the entire right side of [his] body, from head to toes," (*id.* ¶ 19); eye sensitivity, (*id.* ¶ 20); under-eye bruising; and pains in his feet, right shoulder, and the lower part of his back, (*id.* ¶¶ 20-23.) On account of these injuries, plaintiff contends that neither exercise nor employment in the construction field (his prior field of work) are viable options for him upon release from detention. (*Id.* ¶ 36.)

Additionally, plaintiff claims in his amended complaint that, on June 14, 2011, a "corrective surgery" was improperly performed on him by non-party Dr. O'Kefee, which he contends constitutes a continuous violation of his civil rights by the medical defendants. (Pl.'s Aff. in Supp. of Mot. to Amend ("Am. Compl.") ¶¶ 1-3, 8.)[6] Plaintiff suggests that the injuries he sustained during his 2007 arrest required oral surgery, (Am. Compl. ¶ 1), and that his 2011 treatment with Dr. O'Kefee is part and parcel of the deliberate indifference to serious medical needs claim because "it has taken the duration of approximately four (4) years to come to this far [sic], and corrective surgery not be [sic] fully completed," (*id.* ¶ 8.) Plaintiff does not allege that Dr. O'Kefee is connected to the medical defendants, nor does he claim that the medical defendants are responsible, in whole or in part, for the alleged delay in the June 2011 corrective procedure.

## B.  Procedural History

Plaintiff submitted his complaint to prison officials on February 20, 2011. His complaint was subsequently filed on February 24, 2011. On April 28, 2011, Suffolk defendants filed their pre-answer motion to dismiss. Medical defendants filed their motion to dismiss on June 16, 2011.

On June 15, 2011, plaintiff filed a motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, seeking to remove "pleadings from the Defendants that are insufficient to [plaintiff's] defense or any redundant, immatterial [sic], impertinent, or scandalous matter to this complaint," which

---

[6]  Specifically, plaintiff claims that he underwent improper corrective surgery on the left side of his face, which resulted in "drilling an unnecessary hole in the area of [his] first Premolar along the path of [his] Nasal Spine on the Maxilla Bone." (Am. Compl. ¶ 2.)

plaintiff asserted "aid in the purpose to create prejudice against the true issues of this complaint." (Pl.'s Mot. to Strike ¶¶ 1-2.) Suffolk defendants countered on June 17, 2011, noting that they had not filed any pleading in the action, with the exception of their pending motions to dismiss, such that Rule 12(f) could be deemed applicable. On July 25, 2011, plaintiff submitted a letter to the Court, requesting leave to amend. This request was filed on August 1, 2011.[7] At a hearing held on December 28, 2011, the court denied plaintiff's motion to strike, but granted plaintiff's request to amend his complaint. Plaintiff subsequently filed an amended complaint, against the same defendants but adding allegations related to the original claims, which the Court accepted on April 18, 2012.[8] On May 18, 2012, the County defendants and medical defendants filed separate motions to dismiss. On June 18, 2012, plaintiff filed his response. On June 22, 2012, the medical

defendants filed a reply. The Court has fully considered the submissions of the parties.[9]

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the factual allegations as set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Thus, the Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

This standard is especially true when a case involves a *pro se* plaintiff. The Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant* that "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally. . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings. . . . This is particularly so when the *pro se* plaintiff

---

[7] Plaintiff resubmitted a nearly identical request several weeks later, dated August 15, 2011, and filed with the Court on August 25, 2011.

[8] The specific date when plaintiff submitted the amended complaint to prison authorities is not clear from the record. On both February 1, 2012 and March 21, 2012, plaintiff's "Affidavit in support of Motion to Amend the Complaint" was filed with the Court. The docket contains two separate proofs of service of the amended complaint, one dated January 25, 2012, and the other dated March 17, 2012. The January 25 proof of service states that "on the 25th day of July, of 2011[,] I the Plaintiff delivered this complaint to the prison authorities." The March 17 proof of service states that the complaint was delivered on March 17, 2012 to prison authorities. Because either of the possible dates for the amended complaint's delivery to prison authorities – which is the relevant date for purposes of assessing accrual of plaintiff's claims, *see Whitfield v. O'Connell*, No. 09 Civ.1925(WHP), 2010 WL 1010060, at *5 (S.D.N.Y. Mar. 18, 2010) – is outside of the three-year statute of limitations period for the alleged claims, the Court need not determine which dated version of the amended complaint (which are identical in content) is the correct one.

[9] Plaintiff also filed a motion for judgment on the pleadings on November 5, 2012. However, because the federal claims must be dismissed for the reasons discussed *infra*, plaintiff's cross-motion is denied.

alleges that her civil rights have been violated. . . . Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." 537 F.3d 185, 191 (2d Cir. 2008) (internal citations and internal quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se*, the court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s].'" (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)) (alterations in original)).

When assessing a motion to dismiss, the Court generally may only consider the "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Here, plaintiff did not append any documents to his complaint or incorporate any such documents by reference therein. The Court therefore confines its review to the face of the complaint.

### III. DISCUSSION

#### A.     Section 1983 Claims

As a threshold matter, defendants argue that plaintiff's federal claims under Section 1983 are time-barred because plaintiff did not file his claim within three years of the alleged violations.  For the reasons set forth below, the Court agrees with defendants.

##### 1.     Legal Standard

Section 1983 actions arising in New York have a statute of limitations period of three years. *Pendleton v. Goord*, 849 F. Supp. 2d 324, 329 (E.D.N.Y. 2012) (citing *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)). Although "state law supplies the statute of limitations for claims under section 1983, federal law determines when a federal claim accrues." *Quiles v. City of N.Y.*, No. 01Civ. 10934(LTS)(THK), 2003 WL 21961008, at *5 (S.D.N.Y. Aug. 13, 2003). The clock for such a claim begins to run "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Pendleton*, 849 F. Supp. 2d at 329 (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *see also Eagleston*, 41 F.3d at 871 ("[T]he proper focus is on the time of the . . . act, not the point at which the *consequences* of the act become[] painful." (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (internal quotation marks omitted)). In the context of an excessive force claim, the clock starts running "when the use of force occurred." *Fairley v. Collins*, No. 09 Civ. 6894(PGG), 2011 WL 1002422, at *3 (S.D.N.Y. Mar. 15, 2011) (quoting *Jefferson v. Kelly*, No. 06 Civ. 6616(NGG) (LB), 2008 WL 1840767, at *3 (E.D.N.Y. Apr. 22, 2008)); *see also Perez v. Johnson*, No. 07 Civ. 3761(NRB), 2008 WL 2876546, at *2 (S.D.N.Y. July 23, 2008) ("Plaintiff's first claim, for excessive force, accrued . . . when he was allegedly injured by the arresting officers.").

Deliberate indifference claims accrue along the same lines, *i.e.*, "when the plaintiff knows or has reason to know of the injury," *Fairley*, 2011 WL 1002422, at *3; *Whitfield v. O'Connell*, No. 09 Civ.1925(WHP), 2010 WL 1010060, at *5 (S.D.N.Y. Mar. 18, 2010) (same), but with a catch: "when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs," *Shomo v. City of N.Y.*, 579 F.3d 176, 182 (2d Cir. 2009),  the continuing violation doctrine serves as an "'exception to the normal knew-or-should-have-known

accrual date,'" *id.* at 181 (quoting *Harris v. City of N.Y.*, 186 F.3d 243, 248 (2d Cir. 1999)). Assessing an Eighth Amendment continuing violation claim for statute of limitations purposes requires the plaintiff to "allege (1) 'an ongoing policy of deliberate indifference to his or her serious medical needs'; and (2) for each defendant, 'some acts in furtherance of the policy within the relevant statute of limitations period.'" *Whitfield*, 2010 WL 1010060, at *5 (quoting *Shomo*, 579 F.3d at 179, 182-84). The application of such factors allows a court to weed out those Eighth Amendment claims "that challenge discrete acts of unconstitutional conduct or that fail to allege acts within the relevant statutory period that are traceable to a policy of deliberate indifference." *Shomo*, 579 F.3d at 182.

Plaintiffs, however, may stop the clock when they can show that equitable tolling of their federal claim is warranted. Where equitable tolling applies, "the statute does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence . . . ." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) (internal quotation marks omitted)); *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir. 1983) (stating "when the defendant fraudulently conceals the wrong, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action"). Equitable tolling is not to be applied liberally, however; rather, it "applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004); *see also Nat'l R.R. Passenger Corp.*

*v. Morgan*, 536 U.S. 101, 113 (2002) (stating the equitable tolling doctrine is "to be applied sparingly").

2.      Application as to Suffolk Defendants

a.   Excessive Force Claim

Plaintiff claims violations arising from the Suffolk defendants' alleged infliction of excessive force and their subsequent denial of medical care, all of which started and ended on December 20-21, 2007. The Court need not determine whether plaintiff has stated a legally cognizable excessive force claim because, applying the applicable legal framework, any such claim here is time-barred.

Specifically, plaintiff's allegations make clear that plaintiff's excessive force claim accrued on December 20, 2007, *i.e.*, "when the use of force occurred." *Jefferson*, 2008 WL 1840767, at *3; *see also Daniel v. Safir*, 175 F. Supp. 2d 474, 480 (E.D.N.Y. 2001) ("[C]ourts have repeatedly held that claims for . . . excessive force accrue on the date . . . the force is used."); *Perez*, 2008 WL 2876546, at *2 ("Plaintiff's first claim, for excessive force, accrued . . . when he was allegedly injured by the arresting officers."). Although plaintiff's complaint was not filed with the Court until February 24, 2011, he delivered his complaint to prison authorities on February 20, 2011. *See Whitfield*, 2010 WL 1010060, at *5 (stating "[f]or statute of limitations purposes, a pro se prisoner's complaint is deemed filed on the date that the prisoner turn[s] his complaint over to prison officials for transmittal to the court, not when the court actually receives it" (citation and internal quotation marks omitted)). Thus, plaintiff's only actionable excessive force claims are those that accrued on or after February 20, 2008. *See id.* Because plaintiff's excessive force claim accrued on December 20, 2007,

it is time-barred pursuant to the applicable three-year statutory period. *See Fairley*, 2011 WL 1002422, at *3 (stating "'[i]n New York, the personal injury statute of limitations that applies to section 1983 actions is three years'" (quoting *Quiles*, 2003 WL 21961008, at *5)).

### b.  Deliberate Indifference Claim

Plaintiff's deliberate indifference claim against the Suffolk defendants based upon the alleged conduct in December 2007 is similarly time-barred. Plaintiff states that he continually requested medical care during the two-day period when he was in police custody, and that he did not promptly receive the medical care he sought during this timeframe, which constitutes a violation of his Eighth Amendment right to be free from cruel and unusual punishment. (*See* Compl. ¶¶ 10-16.) Plaintiff also acknowledges that the specific factual events supporting his claims are limited to the time period of December 20 through December 21, 2007. (*See id.* ¶ 33 (stating "[t]hat at all times relevant hereto, I was detained or denied medical treatment on the date of: December the 20th of 2007 to December the 21st of 2007 with all of the positions and titles herein noted"); *id.* ¶ 34 (stating "all of the defendants noted in this action violated either an act of police brutality &/or medical depriving me of attention for aid of this act that was brought against me, by the defendants in their individual and official capacities").)

A deliberate indifference claim may lie where plaintiff can show, objectively, "that he was 'actually deprived of adequate medical care' and that 'the inadequacy of medical care [wa]s sufficiently serious,'" and subjectively, "that the charged prison official acted with a sufficiently culpable state of mind, namely that the official was deliberately indifferent to the plaintiff's

serious medical needs." *Jones v. Montalbano*, No. 9-CV-4548 (DLI)(VVP), 2012 WL 847373, at *3 (E.D.N.Y. Mar. 13, 2012) (alteration in original); *see also Benjamin v. Galeno*, 415 F. Supp. 2d 254, 258 (S.D.N.Y. 2005) (noting the deliberate indifference standard "incorporates both objective and subjective elements," and stating "[t]he objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind" (quoting *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002)).

Plaintiff's allegations make clear that, as of December 21, 2007, he was aware of all facts concerning the alleged denial of medical care, *i.e.*, his requests and subsequent denials for medical care while in police custody. Plaintiff does not identify any specific conduct by the Suffolk defendants occurring after December 21, 2007. Thus, plaintiff's deliberate indifference claim fails under the applicable statute of limitations, *i.e.*, three years. For plaintiff to have timely filed his claim, plaintiff needed to have submitted his complaint no later than December 21, 2010; instead, he delivered it to prison officials on February 20, 2011, two months past the requisite deadline. Thus, his deliberate indifference claim is time-barred.

### c.  Continuing Violation

Plaintiff does not expressly assert a continuing violation claim as to the Suffolk defendants in his original complaint. However, he does do so in his amended complaint, which refers back to the incidents alleged in the original complaint, and which the Court accepted on April 18, 2012. Specifically, plaintiff alleges that "ongoing medical procedures . . . need[ed] to be done

on [plaintiff] in-order to partially correct the damage of excessive force done to [plaintiff's] facial area alone, from the incident that [occurred] on the date & time of 12-20-2007 at approximately 10:00 p.m." (Am. Compl. ¶ 1.) On careful consideration of the pleadings, the Court concludes that the facts do not state a plausible continuing violation claim, beyond December 2007, as to the Suffolk defendants.

Specifically, plaintiff has asserted no facts suggesting that the Suffolk defendants had "'an ongoing policy of deliberate indifference to [plaintiff's] serious medical needs,'" nor that the Suffolk defendants committed "'some acts in furtherance of the policy'" during the applicable three-year statute of limitations period. *Whitfield*, 2010 WL 1010060, at *5 (quoting *Shomo*, 579 F.3d at 179, 182).

As to the first point, plaintiff alleges that during the approximately twenty-four hour period when he was in police custody in 2007, he requested medical care and was denied it by several of the prison's personnel responsible for supervising him. The Court is not convinced that these medical denials suggest a policy; indeed, the alleged facts set forth a "discrete unlawful act" of denial of medical treatment during the approximate twenty-four hour custodial period. *See Shomo*, 579 F.3d at 181 ("[T]he continuing violation doctrine can be applied when the plaintiff's claim seeks redress for injuries resulting from 'a series of separate acts that collectively constitute one 'unlawful [act],' but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." (quoting *Morgan*, 536 U.S. at 117)); *see also id.* at 182 (continuing violation claim sufficiently pled because facts showed policy of denial of access to care, as opposed to "an outright denial of access to care"; finding as supportive of policy the fact that plaintiff was frequently

seen by doctors and brought to hospitals, but that prison doctors and staff ignored repeated medical treatment recommendations and denied plaintiff medical care access); *Johnson*, 412 F.3d at 404 ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians.").

Moreover, even assuming *arguendo* that plaintiff could allege a policy of deliberate indifference based upon the December 20-21 period, any continuing violation claim still must fail because plaintiff alleges no "non-time-barred acts taken in furtherance of that policy" by the Suffolk defendants. *Shomo*, 579 F.3d at 182. Stated differently, plaintiff asserts no additional actions taken by the Suffolk defendants during the three-year limitations period following the December 20-21, 2007 incident. *See Whitfield*, 2010 WL 1010060, at *5 (stating a successful continuing violation claim requires "an ongoing policy of deliberate indifference to [a plaintiff's] serious medical needs" *and* "for each defendant, some acts in furtherance of the policy within the relevant statute of limitations period" (citation and internal quotation marks omitted)).

In his amended complaint, plaintiff alleges that a Dr. O'Kefee improperly performed corrective oral surgery on him on June 14, 2011, and that such surgery correlates to the injuries plaintiff sustained from the Suffolk defendants' alleged excessive use of force on December 20, 2007. (Am. Compl. ¶ 1.) This allegation fails to turn back statutory time. The acts allegedly performed by the Suffolk defendants on December 20, 2007 are "discrete" from any actions performed by non-party Dr. O'Kefee approximately four years later. *See Shomo*, 579 F.3d at 181 (noting Supreme Court precedent in which

continuing violation doctrine held to apply to "repeated conduct" that "occurs over a series of days or perhaps years and[] [is] in direct contrast to discrete acts" (quoting *Morgan*, 536 U.S. at 115) (internal quotation marks omitted)). Plaintiff establishes no relationship between the Suffolk defendants and Dr. O'Kefee; he does not explain why they should not be considered wholly independent actors; and he raises no allegations that the Suffolk defendants and Dr. O'Kefee colluded together regarding plaintiff. Indeed, Dr. O'Kefee is not even named as a party in either plaintiff's original or amended complaint. This allegation is insufficient for purposes of establishing either an ongoing policy of deliberate indifference or a non-time-barred act, as the June 14, 2011 incident is a separate and distinct instance of medical care from the December 20-21 2007 treatment.

Thus, because plaintiff sets forth no allegations suggesting a policy of denying medical care and has not alleged non-time-barred acts by the Suffolk defendants conducted in furtherance of such a policy, the continuing violation doctrine does not apply. Accordingly, plaintiff's deliberate indifference claim against the Suffolk defendants is time-barred.

### d. Equitable Tolling

Although plaintiff's federal claims against the Suffolk defendants relate to conduct falling outside of the applicable statute of limitations, the Court must consider the issue of equitable tolling. For the following reasons, the Court concludes that equitable tolling is unwarranted in this case.

Plaintiff contends that equitable tolling is warranted in the instant action because, "being that [his] equilibrium was off" from the alleged December 20, 2007 assault,

plaintiff was unable to timely file his complaint. (Compl. ¶ 42.) Plaintiff additionally asserts that he "was mentally misrepresented in an equitable conduct which would allow [him] to induce a commencement in a most timely manner." (*Id.*) Neither of these allegations is sufficient to justify application of the equitable tolling doctrine.

It is well-established that "in section 1983 actions, [the court] borrow[s] not only a state's limitations period but also its 'tolling rules.'" *Pearl*, 296 F.3d at 80 (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484-86 (1980)). Under New York law, tolling of a statute of limitations period is warranted "where the court has stayed the action, *see* N.Y. C.P.L.R. § 204, where the defendant is outside the state, *see* N.Y. C.P.L.R. § 207, or where the plaintiff is under the disabilities of insanity or infancy[,] [*s*]ee N.Y. C.P.L.R. § 208." *Fairley*, 2011 WL 1002422, at *4. Notably, "New York does not toll the limitations period for most prisoners' lawsuits . . . [n]or is the statute of limitations tolled [simply] because plaintiff is a *pro se* litigant." *Id.* at *5 (quoting *Irizarry v. Whittel*, No. 01 Civ. 10735(DC), 2002 WL 31760240, at *3 (S.D.N.Y. Dec. 9, 2002)). As previously acknowledged, equitable tolling should be applied sparingly. *See Pearl*, 296 F.3d at 85 ("Although we have broadly stated . . . that we will apply the equitable tolling doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights,' *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985), we made it clear that we had in mind a situation where a plaintiff 'could show that it would have been *impossible* for a reasonably prudent person to learn' about his or her cause of action."); *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)); *see also Rochester v. Sixth Precinct Police*

*Station*, 370 F. App'x 244, 245 (2d Cir. 2010) ("[U]nder the doctrine of equitable tolling, a court may, under compelling circumstances, make narrow exceptions to the statute of limitations in order to prevent inequity." (quoting *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003)) (internal quotation marks omitted)).

Here, plaintiff has failed to provide any grounds warranting equitable tolling. *See Fairley*, 2011 WL 1002422, at *5; *Irizarry*, 2002 WL 31760240, at *4. Plaintiff's allegations do not suggest an extraordinary prevention of his ability to exercise his rights, nor that it was impossible for him to learn about his cause of action. Indeed, regarding this latter point, plaintiff's complaint makes clear that, as of December 21, 2007, he was in possession of all of the facts concerning his alleged deliberate indifference claim against the Suffolk defendants. Furthermore, plaintiff sets forth no facts concerning these defendants that post-date the December 20-21, 2007 period. In addition, plaintiff also does not allege any fraudulent concealment on the part of the defendants. *See Pearl*, 296 F.3d at 82 (equitable tolling for a federal cause of action may be appropriate where "fraudulent concealment of a cause of action [ ] has 'in some sense accrued earlier'" (quoting *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995))). Plaintiff's assertions of an unbalanced equilibrium or "mental[] misrepresent[ation] in an equitable conduct" are insufficient justifications as to why plaintiff failed to file by the requisite limitations period. *Cf. Ormiston v. Nelson*, 117 F.3d 69, 72 n.5 (2d Cir. 1997) ("Mere ignorance of the law is . . . insufficient to delay the accrual of the statute of limitations."). Plaintiff's conclusory assertion that his "equilibrium was off" from the alleged December 2007 assault does nothing to explain why he could not file his

lawsuit within the three-year period after the alleged assault. For these reasons, equitable tolling does not apply as to plaintiff's claims against the Suffolk defendants. Accordingly, plaintiff's claims against the Suffolk defendants are barred under the applicable three-year statute of limitations and hereby dismissed.

### 3.    Application as to Medical Defendants

A fair reading of the complaint reveals the following allegations against the medical defendants: (1) medical personnel were deliberately indifferent to plaintiff's serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment, and (2) medical personnel are liable for medical malpractice under New York law. The Court addresses each in turn.

#### a.    Deliberate Indifference Claim

Plaintiff alleges that the medical defendants violated "an act of . . . medical depriving [plaintiff] of attention for aid of [the alleged police assault] that was brought against [plaintiff]." (Compl. ¶ 34.)

As a threshold matter, there is no allegation of state action. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law."); *Green v. Maraio*, 722 F.2d 1013, 1016 (2d Cir. 1983) (stating "a claim for relief under 42 U.S.C. § 1983 only need allege that some person acting under color of state law deprived the claimant of a federal right"). Here, North Shore is a private, domestic not-for-profit New York State corporation. Plaintiff alleges no facts suggesting that North Shore, Dr. Auerbach, or the treating

physicians may be deemed to have acted under color of state law at the time of plaintiff's December 21, 2007 treatment. Nor do the pleadings suggest that North Shore's actions – via Dr. Auerbach and the other co-defendant treating physicians – were the product of "some official [state] policy." *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 433 (S.D.N.Y. 2012) ("[T]o state a § 1983 claim against a private entity, a plaintiff must allege that an action pursuant to some official policy caused the constitutional deprivation.").

Although plaintiff alleges that Dr. Auerbach and the other treating doctors were instructed by the transporting officers to "clean [plaintiff's] face as best they could and only administer [plaintiff] whatever medical attention that is minimal . . . [a]nd don't take any X-rays or Photographs of him," (Compl. ¶ 17), such conclusory assertions are insufficient to set forth an official policy on the part of the Suffolk County Police Department pursuant to which – so the argument would go – officers were required to instruct privately owned hospitals to administer quick and minimal medical evaluations whenever an arrestee was brought in. *See Roy v. New York*, No. 07-CV-0340(DLI), 2007 WL 602303, at *1 (E.D.N.Y. Feb. 20, 2007) (stating a "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them" (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)) (internal quotation mark omitted)). Plaintiff also never alleges that, even if this were such an official policy of the Suffolk defendants, the treating physicians actually abided by it.

However, even assuming *arguendo* that state action could be alleged with respect to the medical defendants, the federal claims

would be time-barred. Plaintiff's only allegations against the specifically-named medical defendants concern the treatment he received on December 21, 2007. That is, plaintiff references no other medical treatment by these medical defendants following the December 21, 2007 incident. Plaintiff delivered his complaint in the instant case to prison authorities on February 20, 2011. He, therefore, missed the requisite statutory-of-limitations deadline by approximately two months. For these reasons, plaintiff's deliberate indifference claim against the medical defendants fails. *See Fairley*, 2011 WL 1002422, at *3.

### b.  Continuing Violation

The only alleged continuing violation that the Court derives from the pleadings is, again, plaintiff's assertion (contained in his amended complaint) that on June 14, 2011, Dr. O'Kefee performed improper corrective oral surgery on plaintiff. In plaintiff's own words: "the deliberate indifference that it has taken the duration of approximately four (4) years to come to this far, and corrective surgery not be fully completed. Yet this to me is another day that I have to live with the disfigurement of the after effects of the unjustly assault on me." (Am. Compl. ¶ 8.) In essence, plaintiff claims that a continuing deliberate indifference violation has occurred because over four years after the alleged December 20, 2007 assault, plaintiff needed oral surgery. This is insufficient for purposes of surmounting the applicable time bar.

Plaintiff fails to explain how any of the alleged medical acts performed by the medical defendants in December 2007 correlate to those undertaken by non-party Dr. O'Kefee in June 2011. Again, plaintiff alleges no relationship between the doctors (whether personal or professional), establishes no reason as to why they should

11

not be viewed as independent actors, and makes no allegation that the 2007 doctors somehow conspired or collaborated with the 2011 doctor to deny plaintiff adequate medical care – as part of an official policy or otherwise. The most plaintiff presents is that his June 2011 treatment allegedly was necessitated by the same incident as the December 2007 treatment. As previously stated, separate and distinct instances of medical care (one of which falls outside of the three year statutory framework) do not establish either a policy of deliberate indifference or non-time-barred acts taken in furtherance of such a policy. *See Shomo*, 579 F.3d at 181 (stating the continuing violation doctrine does not apply where plaintiff only challenges conduct "that is a discrete unlawful act" (citing *Morgan*, 536 U.S. at 117)); *id.* at 182 (to assert a continuing violation, plaintiff must "allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in furtherance of that policy" (quoting *Harris*, 186 F.3d at 250) (alteration in original)). They also do not suggest a single yet ongoing practice of deliberate indifference on the part of the medical defendants. *Cf. Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. The Port Auth. of N.Y. and N.J.*, 681 F. Supp. 2d 456, 465-66 (S.D.N.Y. 2010) (holding that various acts that occurred over different days could be construed as "a single, ongoing unlawful . . . practice" where they related to and evidenced a discriminatory policy, but noting that Supreme Court precedent has made clear "that a series of related *but ultimately discrete acts* could not be treated as a single unlawful . . . practice (emphasis added) (citing *Morgan*, 232 F.3d at 114)).

Because plaintiff fails to show either an ongoing unlawful policy of deliberate indifference or non-time-barred acts

evidencing such a policy, his Section 1983 claim against the medical defendants is untimely.

c.  Equitable Tolling

The Court also has considered the issue of equitable tolling. Plaintiff's equitable tolling argument does not differ from that previously stated with respect to the County defendants. In brief, plaintiff alleges that the equitable tolling doctrine applies because his "equilibrium was off" due to the alleged December 20, 2007 incident, (Compl. ¶ 42), and he "was mentally misrepresented in an equitable conduct which would allow [him] to induce a commencement in a most timely manner," (*id.*), which prevented him from timely filing his complaint. For the reasons previously set forth, such allegations are insufficient for purposes of applying the equitable tolling doctrine.

As discussed *supra*, plaintiff sets forth no compelling circumstances that would support this Court applying a doctrine that typically is only exercised sparingly and on limited occasions. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). The pleadings suggest no fraud on the part of the defendants in trying to conceal the alleged wrong. *See Keating*, 706 F.2d at 381. As of December 21, 2007, plaintiff was aware of all facts concerning his alleged deliberate indifference claim against medical defendants. Moreover, plaintiff sets forth no facts as to these specific medical defendants that post-date the December 20-21, 2007 period. Plaintiff's assertions of an unbalanced equilibrium or "mental[] misrepresent[ation] in an equitable conduct" are insufficient justifications as to why plaintiff failed to file by the requisite limitations period. *Cf. Ormiston*, 117 F.3d at 72 n.5. Thus, the equitable tolling doctrine is inapplicable to plaintiff's claims against the medical defendants. Accordingly, his federal

claims against the medical defendants are barred under the three-year statute of limitations period and dismissed.

### 4.  State Law Claims

In light of the dismissal of plaintiff's federal claims, the Court, in its discretion, declines to exercise supplemental jurisdiction over any state law claims that plaintiff may be attempting to assert. *See* 28 U.S.C. § 1367(c)(3) (providing that supplemental jurisdiction may be declined over a state claim if "the district court has dismissed all claims over which it has original jurisdiction"); *see also Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994) ("[I]t is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial.").

### III. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss the federal claims are granted. The Court declines to exercise supplemental jurisdiction over any state law claims that plaintiff is attempting to assert, and such state claims are dismissed without prejudice. Given that plaintiff's federal claims have been dismissed as time-barred, plaintiff's cross-motion for judgment on the pleadings is denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court will conduct a telephone conference on February 22, 2013, at 1:15 p.m. to address plaintiff's motion to amend the complaint in connection with the alleged medical/dental malpractice that occurred in 2011 after he was transferred to an upstate prison.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 13, 2013
      Central Islip, NY

* * *

Plaintiff is proceeding *pro se*, 09A6400, Cape Vincent Correctional Facility, 36560 Route 12E P.O. Box 739 Cape Vincent, NY 13618. The attorneys for the defendants are Arlene S. Zwilling, Suffolk County Attorney, P.O. Box 6100 H. Lee Dennison Building Fifth Floor, 100 Veterans Memorial Highway Hauppauge, NY 11788-0099; Gillian C. Thomas, Heidell, Pittoni, Murphy & Bach 99 Park Avenue New York, NY 10016, Paul Haberman, Heidell, Pittoni, Murphy & Bach 10 East Street 40th Street Suite 1300 New York, NY 10016.